Good morning. James Harris for Appellant with me at Council Table is Jody Oster, Senior Counsel for Huntington National Bank. The judgment here should be reversed because as a matter of law Metropolitan established two complete defenses to liability and in any event the damages are wildly overstated. Let me turn first to the 9308 issue. 9308 mediates the relative priorities between an original chattel paper financier and a downstream purchaser. And it prefers the good faith purchaser on the theory that the original financier can prevent the chattel paper from ever going into commerce and can protect itself by taking possession which didn't happen here. So 9308 prefers a good faith financier who purchases for new value and without knowledge of a specific interest, a specific security interest in the specific chattel paper. The trial judge made two findings here. With respect to new law the trial judge erred in concluding that there was no new value with respect to the substitute loans. The district judge recognized there was new value as to the original loans but not as to the substitute loans. What the judge failed to appreciate though it was one transaction. Metropolitan in a single transaction purchased a portfolio of 161 loans and it also purchased the attendant contract rights to put back any loans that were in default. It's almost as if Hertz purchases a fleet of a thousand cars from General Motors and purchases the contract right to send back any cars that are lemons. It's one single transaction. So the $4.76 million that Metropolitan paid for the contract rights and the initial portfolio by definition and by necessity includes new value for the substitute loans which it purchased at the same time. But could you just slow down one minute because I know this is all very familiar to you and we've read it and re-read it and we're still trying to get our hands around it, okay? Brian. It's one of those cases that's complex and simple at the same time. I understand and I'd like to think that we're back to the simple now. But I do have one question and that's under the commercial code on section 9105 where the code basically says that you don't have new value if there's obligations substituted for such existing obligations. And I would appreciate your explanation of why that wouldn't be excluded here. Well, because the comments to the code, I mean, that's talking about switching an obligation in, for an antecedent debt and there was no antecedent debt here. What the comments to the code go on to say is that after acquired property, if there was new value at the outset of the transaction, that after acquired property is deemed to have been purchased for that original consideration. Why does after acquired property apply to you as contrasted with to the debtor? Well, I think the whole concept of antecedent debt doesn't really apply here. But if you're making an antecedent debt analysis, then you could characterize the substitute loans as being after acquired property. It was acquired after, I mean, it came into the possession of Metropolitan after the initial transaction date. And what the comments say is that if you view that as after acquired property, if there was consideration at the outset, that's new value for the after acquired property. The idea of old value versus new value is old value is when, say, you have a debtor that has an obligation to the creditor, like, say, a loan. The debtor would be required to pay, say, $10,000 a month, by example, and it can't pay it. And then the creditor says, well, okay, you can't pay it. I'll take this collateral in exchange. That's swapping one obligation for another, and that's not providing new value. But that's not what we have here. We had an original transaction under which we purchased a portfolio of loans and at the same time purchased the right to put back any defaulted loans. So it's not swapping an obligation. It's an original obligation at the outset of the transaction for which good consideration was paid. That's why there's new value as to the substitute loans. In addition, every time Metropolitan put back a loan and got a substitute, Metropolitan released its valid and existing security interest in that loan. And that security interest, that loan then went back to Galaxy Silver State, and they had the right to pursue whatever remedies they had with respect to the loan. They could foreclose, they could sue on But is it the release of the security interest that's the new value in that? Well, that's the second form of new value, Your Honor. All right. As opposed to, in addition to the quote payment. Yeah. There are two forms of new value here. The first is the $4.76 million payment, which by definition encompasses the substitute loans. And then there was the release of the security interest, which accompanied the release of, which accompanied the substitution processes to each loan. Two forms of new value as a matter of law. Look, let me ask you something. If you were correct on the 9... 9308? Yes. It's hard to keep the numbers down. Preferring Metropolitan because it lacked knowledge. Yes. Wouldn't the rest of this be better determined by the district court, which never actually did it because it just deemed that Metropolitan had the knowledge of its predecessor? There is no evidence in the record that... No, I think that issue is out of the case. If you look at the excerpts of the record, 210 to 215, that was the PVCC's trial brief. And they made three arguments below as to why the knowledge requirement was satisfied. They first argued... Yeah, but that wasn't exactly my question. If you were correct on that... Yes. ...then shouldn't the remaining criteria, that is, new value and being purchased in the ordinary course of Metropolitan's business, be determined by the district court in the first instance rather than by us? Because the district court never reached it, having concluded to begin with that Metropolitan did have knowledge. You could remand for that purpose. I think, though, that the district court did make a determination as to new value but erred as a matter of law in concluding that the $4.76 million didn't apply to the substitute loans. I mean, I think what I remember was that the court said there was no new value but didn't say why. Yes. We've rarely got the benefit of its reasoning. So that is a possible way you could go. You could remand for that purpose. Or you could say, because we know the nature of the transaction, we know what the legal standard is under a McConney-type analysis, it's a legal question as to whether this type of transaction satisfies the new value criterion. And you could determine that on your own or you could send it back. But I think the real fight between the parties here is with respect to the knowledge criterion. And What would that do to the damages if the 9308 were reversed? If the 9308 were reversed, there would be no damages because then we would have had a prior security interest as to all of the chattel paper. And by definition under the UCC, there couldn't have been any kind of invasion of PBCC's possessory rights. Metropolitan's rights would be superior to PBCC's and the entire damage analysis becomes moot. And that's something that I don't think PBC, we made that point in our opening brief and PBCC did not dispute it. They disputed our argument as to whether the defenses had been satisfied. But they didn't dispute that if they were satisfied, they're entitled to no damages. So with respect to knowledge, the judge made a fundamental error of law. The judge concluded that the actual or constructive knowledge of Metropolitan's predecessor could be attributed to Metropolitan. And there's absolutely no support for that proposition whatsoever. Section 9105 defines knowledge as a person knows or has knowledge of a fact when he has actual knowledge of it. No attribution. If you look at 9308, it talks about the knowledge of a purchaser of chattel paper. It doesn't say knowledge of the first purchaser of the chattel paper. Any purchaser of chattel paper who acts without knowledge satisfies the statutory criteria. And if you look at the authorities, Hawkland, the major commentator on UCC, agrees that it's an actual knowledge standard. The Cato case squarely held that. This court in the Southland case, under an analogous statute, said actual knowledge is required. I want to focus on one case that PBCC argues at some length because they say the in-rate commercial mortgage case demonstrates that the knowledge of the upstream purchaser is relevant. And they misread that case. What happened in that case is a bank purchased chattel paper that had been financed by an original financier. The bank went insolvent. The bank was taken over by a receiver. The receiver didn't pay anything for the bank's assets. It's almost like an FDIC type receivership. The bank stepped into the shoes, excuse me, the statutory receiver stepped into the shoes of the insolvent bank. Because of that, the only way that the receiver could try to make out a 9308 defense was by standing in the shoes of the insolvent bank. The court did not say you take a look at the knowledge of the intermediate seller. In that case, the receiver, who was the defendant in Metropolitan's position, basically was the intermediate seller. So that case doesn't help them at all. So I think it's quite clear that the district judge's conclusion that Mountain's knowledge could be attributed to Metropolitan was wrong as a matter of law. And to the extent that you agree with us on the new value standard, that requires a complete reversal. At the very least, if you agree with us on actual knowledge, it requires a reversal with respect to the damages as to the initial portfolio. Because they're clearly, I mean, the district judge clearly recognized that there was a new value as to the initial portfolio. So the judgment has to be cut at least by half. And in our view, because there was new value as a matter of law with respect to the entire portfolio, substitutes and originals, there should be a complete reversal. If 9308 were not applicable. Yes, Your Honor. Would the decision of the district judge that someone who has knowledge transfers to someone else, that that can't be attributed to the transferee? I think what the district judge confused there was the difference between assignment of contract rights and the creation of a priority security interest. The general rule is that when you're the assinee of contract rights, you stand in the shoes of your assenor. But you don't create a priority security interest by virtue of the assignment. The priority security interest was established by virtue of compliance with the statutory criteria, being a purchaser without knowledge. So the judge was basically mixing apples and oranges, confusing contract assignment with statutory perfection. I'll save the remainder of my time. Sure. Ms. Freeman. Good morning. Susan Freeman for PBCC. May it please the Court. There are really five ways that we win in this case and that the district court's judgment should be upheld. Would you speak up a little? Certainly, Your Honor. I apologize. There are really five ways that we win in this case and that the district court's judgment should be upheld. First, the district court's judgment. Second, first, there were findings. There were findings of fact that, in fact, the Metropolitan did not meet its burden of proof with respect to PBCC consenting to this release of or superseding of its security interest under 9306 or the obligation of Metropolitan to prove all three of lack of knowledge of PBCC's interest possession before having knowledge of PBCC's interest or new value. So that's four. And then the fifth way is with respect to the law, the interpretation of 9-308. You can uphold just on the basis of the factual findings alone and the determination that the burden of proof was not met. With respect to the district judge got the actual knowledge component wrong, then wouldn't it follow that the rest of it, at a minimum, needs to go back? I don't think so, Your Honor. Because? Because I think that the court did determine in its interpretation of 9-308 that the knowledge of Mountain Bank could be attributed to its successor. No, I understand that. But if he got that wrong? But he also found, he also found that the Metropolitan failed to meet its burden of proof. After listening to five days of evidence, after observing the witnesses, it made a number of findings of fact. And those findings of fact, certainly with respect to value, but also with respect to lack of knowledge, with respect to whether possession was received, all of those had to be met. Where did the district court make a finding that Metropolitan had actual knowledge rather than knowledge derived somehow from imputation? What it had was evidence before it with respect to Metropolitan Bank having gone and looked at the Mountain Bank files. It had evidence that the security interest specifically said, that the UCC-2 said that this release is limited to and applies only to these 32 contracts. It had evidence that at some point in time, knowledge was obtained, admissions that at some point by Mountain Community. Could I just, yeah, go back to that? No, no, no. By Metropolitan. Metropolitan wasn't pressed. What they say in here, I'm looking at the findings, which goes to Judge Rimer's question. Yes. Because they talk about Mountain Community's knowledge. Yes. Or deemed to have knowledge. And then in several instances, the court goes on to say that knowledge is attributable to Metropolitan. Correct. So it's this derivative pass-through knowledge. But it also says that it failed to meet its burden of proof to overcome PBC's prior security interest. Well, but. To meet that burden. In a way, though, it's like we're going in circles, because they didn't meet their burden of proof of knowledge, for one thing. But the reason here is because knowledge is charged to home, I mean, to Metropolitan. It doesn't say that's the only reason. Well, but is, does it say, is there somewhere else I should be looking in the findings that would support your statement that there's some other reason that they get tagged with knowledge? What I would look to, Your Honor, is the finding on page, on ER4, that Metro did not meet its burden of showing that Metro's purchase extinguished PBC's perfected first land. Yes, but if that conclusion is based on an incorrect legal standard, it has to go. I'm not suggesting that Metropolitan has actual knowledge. Maybe if it goes back, they will be found to have had actual knowledge. But what I'm saying is, if the district court assumed that it could impute knowledge to Metropolitan based upon Mountain Community's knowledge, that may be legal error. Even if so, Your Honor, it would not be enough to send it back, because there was an obligation on the part of Metropolitan to show not only actual knowledge, but possession prior to having actual knowledge. And it admitted having actual knowledge at some point in time. There's an admission, a Rule 36 admission, and you certainly have actual knowledge at the point in time that it received evidence of PBC's interest in prior litigation in October 1 of 1999. There's just no fact-finding on that. That may be true. There's just no fact-finding on that. Is there? But what you have is a record that shows that, and you have the court finding enough. And I guess my point, Your Honor, is that you have all of the different components that have to be met. Yeah, but I ain't the district judge. That's the problem. But the district judge has the finding with respect to new value. The district judge has the finding with respect, although there's no specific finding with respect to possession. You have enough in this record. That's the other question I had. Okay. The three elements here, lack of knowledge we've talked about. When we talk with counsel about new value, we can come back and get your view on that. Thank you. But if there is possession prior to having knowledge, that's not in the findings one way or the other? There's not a specific finding that addresses possession. There is, however, the findings that the burden of proof has not been met. And you have sufficient evidence in the record to show that there really is no proof of possession before having knowledge. Again, you have admitted knowledge in October of 1999. You have an admission under Rule 36 that at some point in time, we certainly had knowledge. That kind of, I didn't know what to do with that. Because at some point, I didn't know what point that was. Exactly. They were trying to duck it. So I would say it's almost like a non-admission. And the point is, Your Honor, it's their burden of proof. Their burden of proof to show that they had lack of knowledge. It's their burden to show lack of knowledge, and the court was perfectly entitled to say they didn't meet it. Because they have this admission of at some point in time, because their only evidence is a paralegal saying, I don't have any evidence at all as to when I received possession of these documents. All I have is, I know I had them at some point in time. And the court is able to say, you know, you may well have obtained your possession after October 1 of 1999. That's when you certainly went on a rampage of trying to expressly supersede PBCC's land by trying to go out and obtain original contracts. The court is entitled to say, you didn't meet your burden of proving that you had possession before you had knowledge. And there is a record here as to knowledge at one point in time. What about the value issue? Would you address that, please? With respect to the value, what you have is a, again, I believe it's a factual finding with respect to the lack of value of the substitute contracts. And if the court will look to page 53 of the opening brief, the Metro Bank acknowledges that the return contracts were in default and, quote, unquote, worthless. There's an acknowledgment that those were worthless what they returned back. So you have no real value that's coming back into the estate with respect to those. You have Metropolitan Bank affirmatively determining that these are worth 80.25 percent of face. And that's what it originally loaned against at that value and then required substitute replacement. What about the release of the interest as value? All of the case, it was not what it released was a security interest in paper that was worthless, that was in default and admittedly by the appellant worthless. That is not giving new value back to the estate. That's not giving new value back to the borrower. Instead, it's a continual taking of additional value out of the estate. It's a negative drain on the borrower, which ultimately ended up in a bankruptcy. So in the estate in that sense. What you have is, I believe, no new value even in the first place that comes into the borrower. And contrary to what was stated in the opening argument, there is no finding of fact ever that there is new value in the initial acquisition by Metropolitan. That was another question amongst or within that 4.76 million. I think counsel argued that within there that some portion of that is new value. As a matter of law in interpreting new value, what is your position on that? The court needs to look to the whole concept of new value under the bankruptcy code and that's what the uniform commercial code says you look back to. The point is whether there is something that is coming back into the borrower's estate that can be used to protect the underlying secured creditor, the inventory secured creditor, the creditor that advanced initial value against this chattel paper. If there is value that is really coming back into the estate, then that's one thing. That is providing the protection and that's the whole point and purpose of the new value requirement. You don't have that in this instance. What you have is a substitution of an obligation for an obligation and that expressly is not new value under the current version of the UCC and under the California version initially. When they pay that money, does that not go into the borrower's coffer in effect or no? It did not. It just went to Mountain. Mountain paid money initially but Metropolitan paid Mountain and none of that money came back to protect the existing lender, PBCC. Let me go just a... It would have had to go up to Silver and Galaxy in order to protect PBCC. And it didn't. That's correct. To some degree. That's correct. It needed to go back and it did not. All of the cases that we have found, aside from the commercial management services, all deal with a situation where you have an initial inventory lender or a lender against chattel paper and then a subsequent lender who's coming in and acquiring chattel paper or borrowing and lending money against that chattel paper of that borrower. This is not a turning and churning of chattel paper into the stream of commerce. This is not a situation... We don't have any cases that are addressing the situation that is before us, which is really somewhat akin to the subprime loan chattel paper turning and turning and turning. And the point is all of the cases and the commentaries and the UCC underlying principles deal with new value coming back in to protect that initial lender. And they don't supersede the common law or the principles of 9306, which are that the assignee takes what the assignor has to give. And if what the assignor has to give is something that's subject to a set-off or subject to a prior security interest, the assignee doesn't get more than that. You can't launder your paper. You can't have an entity in the position of Mountain that is now manufacturing value by saying, oh, I'm just not going to tell you about the prior security interest. Here you have, I believe, due diligence on the part of Metropolitan Bank, which it was obligated to do. It couldn't just assume that it was going to be okay. I think that argument obviously makes a great deal of sense, practical matter. But the code appears to take a somewhat different view. The code appears to require actual knowledge on the part of the purchaser, downstream purchaser. And it appears to expect the person in the position of PVPC to protect itself by either retaining possession of the chattel paper or stamping it, so that it's obvious. Here we do have evidence in this record that PVCC did obtain possession of the chattel paper. But I mean, long after everything. No, no, no. Initially. That PVCC initially took possession. And there really is a dispute. Well, we would never have gotten out of it if you hadn't. But there's a dispute in the record with respect to which chattel paper took, who took possession and when. You do have evidence with respect to PVCC taking possession of this paper. And you do have the receiver's report that this was turned over and over. My point is simply one of policy of practicality here, that there are ways contemplated by the code for somebody in your client's position to protect itself, rather than to put the burden on the downstream transferee to do a title serve. But the point, Your Honor, I think is that the UCC is not contemplating in this 9308 a turning and turning and turning. I understand that. And what it is contemplating is that there's going to be new value. That there will be. Yes, you do not have the burden to go out and look. But if you do look, then you are charged with the knowledge that you see. And that knowledge would include, in this instance, the files which include the UCC2 and the actual knowledge of Mountain Bank. Mountain Bank sitting down with Metropolitan Bank and looking at all of the documents, looking at these documents in the file, and those would include Mountain Bank's actual knowledge. And Mountain Bank's representative said that he told the Metropolitan Bank person about PBC's security interest. And when you have that knowledge, if you look at CATL, you look at Commercial Bank, those are saying you look at what's in the file. And if you then have the actual knowledge, that's enough. Here we have a finding. They didn't meet the burden of proof, which would include lack of actual knowledge. Thank you very much. Time has expired. Thank you. Mr. Harris. I'll be brief, Your Honors. Counsel for PBC is asking this Court to make a whole slew of factual findings in the first instance that the trial court never made. The trial court never found actual knowledge on the part of Metropolitan. And as a matter of fact, that issue wasn't even in the case as it was presented to the trial court. If you look at PBC's trial briefs, they didn't argue that there was actual knowledge at the time of the initial portfolio. They argued the attribution of Mountain's knowledge to Metropolitan. And then they argued constructive knowledge starting 18 months later, 18 months after the initial portfolio was given to Metropolitan. That's at Excerpts of the Record 210-215. So the issue that she's now urging the trial court made a finding on wasn't even part of the case. PBC essentially conceded that. And there's nothing in the trial court's order that would suggest it found actual knowledge. If this Court does go down the road of remanding on the assumption that actual knowledge was a legal error by the trial judge, then because there was no actual knowledge contention with respect to the initial portfolio or the 66 substitute loans that were acquired before, Metropolitan assertedly got constructive knowledge 18 months later. And because there clearly was new value with respect to the initial portfolio, I think the proper disposition on that assumption would be to cut the judgment substantially to take out all the damages with respect to the initial portfolio and the 66 first substitutes and then only remand with respect to the remaining substitute contracts. With respect to her argument about 9308 and new value, what counsel is basically arguing is that 9308 only protects the initial purchaser of the chattel paper. And that's not true. There's nothing in the statute that says that. The UCC has been on the books for a long, long time. No court has ever held that. You would substantially upset settled commercial expectations all around the country if in the first instance you were to reach that novel conclusion which is not supported by the statutory text which simply talks about purchaser. Very briefly, in the alternative we have a 9306 argument. They authorize the disposition of the collateral. The one point that I would like to make with respect to that is they drafted the papers. The papers that they drafted are inept in my view. They conflict and they're inconsistent in all sorts of views, in all sorts of respects. But the security agreement plainly says that chattel, that accounts receivable are collateral and that collateral can be sold in the ordinary course of business and that's exactly what happened. So at the very least I think you need to cut the judgment substantially even if you remand. But I think the proper disposition is to reverse entirely. Thank you for your attention. Thank you, counsel. Both of you. The matter just argued will be submitted.
judges: Hug, Rymer, McKeown